# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JUST FUNKY, LLC,     )  CASE NO. 5:21-cv-1127
           )
           )
     PLAINTIFF,  )  JUDGE SARA LIOI
           )
vs.          )
           )  MEMORANDUM OPINION AND ORDER
           )
BOOM TRENDZ, LLC, et al.,   )
           )
           )
     DEFENDANTS. )

This matter is before the Court on the motion of plaintiff for a temporary restraining order. (Doc. No. 4.) The Court conducted a hearing on plaintiff's motion where all parties were represented by counsel and counsel presented argument regarding their clients' respective positions on plaintiff's motion. For the reasons that follow, plaintiff's motion is denied.

## I. BACKGROUND

According to the complaint, Just Funky is a "premiere manufacturer of licensed and private label merchandise for the mainstream retail market." (Doc. No. 1 ¶ 8). Just Funky's principal place of business is in Richfield, Ohio where they are "in the business of procuring licenses to third party intellectual property, and arranging for the designing, manufacturing, distribution, sale, and use of articles pursuant to said licenses." (*Id.* ¶¶ 7, 9). Defendant Boom Trendz is an Ohio LLC engaged in a similar business enterprise to that of Just Funky with its principal place of business in the state of Ohio. (*Id.* ¶ 10). Defendant Carpenter, who resides in Wooster, Ohio, was previously employed by Just Funky and currently is the owner and statutory agent for Boom Trendz. (*Id.* ¶¶ 12, 13.) Defendant Tyagi was also previously employed by Just Funky as part of plaintiff's India-based

operations and is a resident of India,[1] but "work[ed] closely" with Ohio headquarters. (*Id.* ¶ 14). Tyagi's employment with plaintiff ended on October 30, 2020, and he is now employed by Boom Trendz. (*Id.* ¶¶ 41–43.)

Plaintiff claims that Carpenter, Boom Trendz, and Tyagi have violated both federal and state law in connection with Just Funky's confidential information and trade secrets. Specifically, plaintiff alleges that all three violated the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836, et seq.) (Count One) (Doc. No. 1 ¶¶ 81–89), the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030(a)(4)) (Count Two) (Doc. No. 1 ¶¶ 90–97), and Ohio's Uniform Trade Secrets Act (Ohio Rev. Code § 1331.61 et seq.) (Count Three) (Doc. No. 1 ¶¶ 98–105) by misappropriating plaintiff's confidential, proprietary information and trade secrets, and unfairly competing against Just Funky (Count Four) (Doc. No. 1 ¶¶ 106–110). As to plaintiff's claims against the defendants individually, Just Funky alleges that under Ohio law, Tyagi and Carpenter breached the restrictive covenants in their contracts with plaintiff by disclosing and misappropriating plaintiff's confidential information and trade secrets and by competing against plaintiff and soliciting plaintiff's customers, manufacturers, and suppliers (Counts Five and Six, respectively). (*See* Doc. No. 1 ¶¶ 111–120). Lastly, in Count Seven, Just Funky claims that Boom Trendz and Carpenter tortiously interfered with plaintiff's contract with Tyagi by causing Tyagi to breach his contract as alleged in Count Five. (*See* Doc. No 1 ¶¶ 121–125.)

---

[1] Tyagi is not an Ohio resident, but it appears that the Court has personal jurisdiction over Tyagi because plaintiff's claims against Tyagi arise out of his business activities in the state of Ohio and Tyagi could reasonably expect that his actions in India could cause harm to Just Funky in Ohio. *See* Ohio Rev. Code § 2307.382(A)(6). Moreover, plaintiff claims that by the terms of his contracts with Just Funky, Tyagi agreed to the jurisdiction of state and federal courts in Ohio.

The Court has subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(2).

Plaintiff filed a motion seeking injunctive relief against all three defendants pursuant to Fed. R. Civ. P. 65 in the form of a temporary restraining order ("TRO") and/or preliminary injunction only as to its misappropriation claims (counts one and three) and its contractual claims (counts five, six, and seven). (Doc. No. 4.) At the hearing, defendants' counsel argued on behalf of their respective clients that the allegations in the verified complaint and exhibits thereto are insufficient to support an award of equitable relief under Rule 65.[2]

## II.     DISCUSSION

### A. Standard of Review

Plaintiff brings its motion for injunctive relief pursuant to Fed. R. Civ. P. 65. In determining whether to impose a TRO, the Court considers the same four factors as are considered for a preliminary injunction: (1) whether plaintiff has a substantial likelihood or probability of success on the merits; (2) whether plaintiff will suffer irreparable injury if the relief is not granted; (3) whether the injunctive relief would unjustifiably harm a third party; and (4) whether the public interest would be served by issuing the injunctive relief. *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 687 (N.D. Ohio 2002). The test is a flexible one and the factors are not prerequisites to be met but considerations that must be balanced against each other. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing cases); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

---

[2] At the conclusion of the hearing, the Court inquired if counsel for defendants desired to file a written response to plaintiff's motion. Counsel stated that they would rely upon their arguments at the hearing.

While no single factor is determinative, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). And, in the context of a temporary restraining order, there is emphasis on consideration of irreparable harm in order to preserve the status quo. *See Reid v. Hood*, No. 1:10-cv-2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Motor Vehicle Bd. of Cal. v. Fox*, 434 U.S. 1345, 1347 n.2, 98 S. Ct. 359, 54 L. Ed. 2d 439 (1977)); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996) ("[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had.").

Plaintiff bears the burden of establishing entitlement to the extraordinary remedy of a temporary restraining order. *See Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (citations omitted). To satisfy this burden, the party seeking a TRO must establish its case by clear and convincing evidence. *Hartman v. Acton*,—F. Supp. 3d—, No. 2:20-cv-1952, 2020 WL 1932896, at *2 (S.D. Ohio Apr. 21, 2020) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)); *Honeywell, Inc. v. Brewer-Garrett Co.*, No. 97-3673, 1998 WL 152951 (6th Cir. March 23, 1998)); *see also Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 1179955, at *4 (S.D. Ohio March 13, 2015) ("The burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one: '[t]he party seeking the injunction must establish its case by clear and convincing evidence.'") (quoting *Overstreet,* 305 F.3d at 573); *Union Home Mortg. Corp. v. Cromer*, No. 4:21-cv-385, 2021 WL 1601193, at *7 (N.D. Ohio Apr. 23, 2021) ("'The burden of proving that the circumstances clearly demand such an extraordinary remedy is a heavy one since the party seeking the injunction must establish its case by clear and convincing evidence.'") (quoting *Hartman,* 2020 WL 1932896, at *2). Indeed, plaintiff's burden of establishing that it has a substantial likelihood of success on the merits of its claim is more

demanding than that required to survive a motion to dismiss or even summary judgment. *Marshall*, 2015 WL 1179955, at *8 (citing *Leary,* 228 F.3d at 739 ("[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion.")).

## B. Analysis

As noted, plaintiff moves for temporary injunctive relief only as to counts one and three (the "misappropriation claims") (Doc. No. 4-1 at 6[3]), and counts five, six, and seven (the "contractual claims") (*id.* at 9-10). The Court limits its analysis accordingly.

After considering the allegations in the verified complaint and exhibits thereto, the arguments of counsel at the TRO hearing, and balancing the factors applicable to consideration of plaintiff's motion, and the Court finds that, at this time, plaintiff has not satisfied its burden establishing entitlement to a TRO.

### 1. Carpenter and Boom Trendz

#### a. *Likelihood of success on the merits*

##### *Contract claims (counts six and seven)*

Carpenter was employed as a Key Account Manager by Just Funky from August 2012 until April 5, 2019. As an account manager, plaintiff alleges that Carpenter had access to plaintiff's confidential and proprietary information and trade secrets. Carpenter executed three agreements in connection with her employment with Just Funky. (*See* Doc. No. 1 ¶¶ 24–30; Doc. Nos. 1-1, 1-

---

[3] All page number references are to the page numbers assigned to each document by the Court's electronic filing system.

2, 11.) In count six, plaintiff claims that Carpenter breached the restrictive covenants in those agreements.

The first, entitled Fair Competition Agreement ("FCA"), was executed by Just Funky and Carpenter on May 3, 2013. (Doc. No. 1-1.) Paragraph 1 defines Just Funky's confidential information as including the identity of Just Funky's customers, manufacturers, and suppliers, internal procedures and processes, costs materials, special requirements, sales and pricing, business plans, operational procedures and policies, scientific, engineering, and technical information, product development and performance information, and Just Funky's trade secrets as defined by Ohio Rev. Code § 1331.61 *et seq.*, and prohibits Carpenter from disclosing this information. The terms of the FCA also prohibit Carpenter from soliciting Just Funky's employees, customers, manufacturers, and suppliers for a period of twenty-four months following the termination of her employment with Just Funky. (*Id.* ¶¶ 2–4.) The FCA further prohibits Carpenter from competing with Just Funky for a period of twenty-four months following the termination of her employment within a certain territory described in an exhibit[4] to the agreement. (*Id.* ¶ 5.) The FCA provides that if Carpenter breaches the terms of paragraphs two through five, the twenty-four month limitation period is extended for a period of time equal to the time period of the breach. (*See id.* ¶ 7.)

The second agreement, signed by Carpenter and Just Funky on July 1 and July 2, 2014, respectively, is simply titled "Agreement" and is similar to the FCA with respect to its confidentiality provision and twenty-four month non-solicitation time period. The Agreement's

---

[4] The exhibit describing the territory encompassed by the non-competition provision has not been provided by plaintiff with the agreement attached to the complaint.

twenty-four month non-competition provision is limited to the United States and Canada. (*See* Doc. No. 1-2 ¶¶ 1–5.) Like the FCA, the Agreement contains a tolling provision. (*See id*. ¶ 7.)

The third agreement, titled Separation Agreement and Release ("Separation Agreement"), was presented to Carpenter on April 5, 2019—the date her employment with Just Funky ceased. (Doc. No. 11 at 2.) Paragraph 8 of the Separation Agreement is entitled Noncompetition and Nondisclosure. Under the terms of that paragraph, Carpenter agreed that for a period twenty-four months, she would not (1) solicit Just Funky employees for employment, (2) solicit or procure business for competitors of Just Funky, (3) solicit or procure business from, or contact for that purpose, Just Funky customers, associates, or vendors, (4) assist any business which is a direct competitor of Just Funky located in the United States, and (5) disclose trade secrets or confidential information including customer lists, client lists, vendor lists, and product information. (*Id*. ¶ 8.) That section also provides that Carpenter "continue[s] to be bound by her employee non-disclosure agreement and will not disclose Company Confidential information or trade secrets to any third party with [sic] the express written permission of the Company." (*Id*.) Unlike the FCA and Agreement, the Separation Agreement does not contain a tolling provision.

Plaintiff alleges in count six that Carpenter failed to abide by the restrictive covenants in her agreements with Just Funky to refrain from disclosing plaintiff's confidential information and trade secrets, from soliciting plaintiff's customers, manufacturers, and suppliers, and from competing with plaintiff's business, and that these breaches have caused plaintiff irreparable harm. (Doc. No. 1 ¶¶ 116–120.) At the TRO hearing, Carpenter's counsel argued that Carpenter has not breached her agreements with Just Funky.

In order to prevail on a breach of contract claim under Ohio law,[5] plaintiff must establish: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *Issuer Advisory Grp. LLC v. Tech. Consumer Prods., Inc.*, No. 5:14-cv-1705, 2015 WL 458113, at *3 (N.D. Ohio Feb. 3, 2015) (quoting *V & M Star Steel v. Centimark Corp.,* 678 F.3d 459, 465 (6th Cir. 2012) (citations omitted)). Even assuming for the purpose of this analysis the existence of a valid contract, the Court finds that, at this stage of the litigation, plaintiff has not established a likelihood of success on the merits of its claim that Carpenter breached the Separation Agreement.[6]

Plaintiff alleges without elaboration that "[o]n information and belief, Carpenter became affiliated with Boom Trendz prior to January 18, 2021." (Doc. No. 1 ¶ 33.) While the Separation Agreement prohibits Carpenter from "directly or indirectly assist[ing] any business which is a direct competitor of [Just Funky] located anywhere in the United States" within the twenty-four month limitations period, this vague and conclusory allegation of "affiliation" is insufficient to carry plaintiff's burden of showing that it is likely to succeed on the merits of its claim that Carpenter breached the Separation Agreement's non-competition, non-solicitation, and non-disclosure provisions. Similarly, plaintiff's conclusory claims that Carpenter and Boom Trendz "began soliciting Plaintiff's manufacturers and suppliers the moment Boom Trendz filed its

---

[5] The Separation Agreement provides that its terms are governed by Ohio law and that Carpenter agrees to submit to the personal jurisdiction of the federal and state courts in Ohio for the purpose of administering and enforcing that agreement. (Doc. No. 11 ¶ 22.)

[6] It is unclear whether the Separation Agreement is the only agreement to which plaintiff's breach of contract claim applies. The Separation Agreement contains an "entire agreement" clause (Doc. No. 11 ¶ 15) and, while the Separation Agreement states that Carpenter also continues to be bound by "her employee non-disclosure agreement" there is no such agreement bearing that title before the Court. And to the extent that the language in the Separation Agreement referring to Carpenter's "employee non-disclosure agreement" is intended to refer to one or more of Carpenter's earlier agreements with Just Funky, plaintiff has not established how the inconsistent terms among those contracts are to be reconciled.

8

articles of incorporation . . . but in any event no later than January 18, 2021[]" (*Id*. ¶ 41) are also insufficient. *See Total Quality Logistics, LLC v. EDA Logistics*, No. 1:21-cv-164, 2021 WL 1964699, at *5 (S.D. Ohio May 17, 2021) (denying plaintiff's motion for a preliminary injunction and granting without prejudice[7] defendant's motion to dismiss plaintiff's claim for tortious interference with business relationship because plaintiff's allegation that "upon information and belief, [Daniels is] doing business with at least one TQL customer with whom he worked while employed at TQL" is purely conclusory and does not provide the name of the customer at issue or any other factual context to establish a level of plausibility that would allow the court to draw a reasonable inference the defendant is liable for the misconduct alleged).

Plaintiff further alleges that Carpenter became the owner of Boom Trendz[8] after her separation from Just Funky in April 2019 and, as owner, she is in direct competition with Just Funky and has pursued many of the same licensors, manufacturers, and suppliers as Just Funky and marketed for sale products that are virtually identical to Just Funky's products. (Doc. No. 1 ¶¶ 32, 35.) Even assuming the truth of the allegation that Carpenter is an owner of Boom Trendz, plaintiff does not allege, and there is no evidence before the Court, that she became an owner before the expiration of the twenty-four month limitation period in the Separation Agreement.[9]

_____

[7] Because plaintiff presented the evidence regarding this claim "at the preliminary injunction hearing suggesting that it may be able to supplement this claim," the court in Total Quality Logistics granted defendant's motion to dismiss the tortious interference claim without prejudice. *Total Quality Logistics, LLC,* 2021 WL 1964699, at *6.

[8] Plaintiff also alleges that Boom Trendz filed its articles of incorporation with the State of Ohio on December 14, 2020 but does not allege that Carpenter filed the articles. (*See* Doc. No. 1 ¶ 11.)

[9] Plaintiff also claims that Carpenter became Boom Trendz's statutory agent on April 19, 2021. (Doc. No. 1 ¶ 34.) As an initial matter, Just Funky does not directly allege that Carpenter violated the Separation Agreement when she became the statutory agent for Boom Trendz. Further, it is unclear whether this date falls within or outside of the twenty-four month limitation period. The complaint alleges that Just Funky terminated Carpenter on April 5, 2019 (Doc. No. 1 ¶ 29) and then, in conclusory fashion without elaboration or explanation, claims that the twenty-four month limitation period extended through April 26, 2021 (*id.* ¶ 30). At the TRO hearing, however, Carpenter's counsel argued, and Just Funky's counsel did not disagree, that the twenty-four month limitation period extended through

Plaintiff also contends that "[i]n April 2021" Carpenter contacted a third-party vendor of Plaintiff to solicit a business relationship." But again, plaintiff does not allege or provide any evidence that Carpenter did so within the twenty-four month limitation period of the Separation Agreement. (Doc. No. 1 ¶ 50; *see also id.* ¶¶ 51, 52.)

Violation of a post-termination non-solicitation and non-compete agreement may constitute irreparable injury. *See Akron Paint & Varnish v. Budd*, Case No. 5:16-cv-2944, 2016 WL 7235536, at *2 (N. D. Ohio Dec. 14, 2016) ("Court have found that the breach of a non-compete agreement and the unauthorized solicitation of customers constitutes irreparable injury.") (citing *Basicomputer v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)). At this time, however, plaintiff has not carried its burden to establish by clear and convincing evidence a substantial likelihood of succeeding on its claims that Carpenter violated her agreement with Just Funky by engaging in the alleged conduct within the twenty-four month limitation period and that such conduct violated the terms of the Separation Agreement's non-competition and non-solicitation clauses.

In count seven, tortious interference with contract, plaintiff claims that Boom Trendz and Carpenter procured defendant Tyagi's breach of his restrictive covenant agreement with Just Funky by employing him in competition with plaintiff, directing his solicitation of plaintiff's customers, manufacturers, and suppliers, and procuring Tyagi's disclosure of plaintiff's confidential information and trade secrets. (Doc. No. 1 ¶¶ 121–125.) But for the reasons discussed below, the Court finds that plaintiff has not carried its burden to establish a likelihood of success

---

April 5, 2021—two years after Carpenter's employment with Just Funky ended. Given the lack of a direct allegation by Plaintiff that Carpenter's role as statutory agent violated her agreement with Just Funky, the conclusory nature of plaintiff's allegation in the complaint concerning the termination date of the twenty-four month limitations period and apparent fact dispute between Just Funky and Carpenter regarding that date, the Court concludes that at this time, plaintiff has not carried its burden to establish that Carpenter became Boom Trendz's statutory agent within the limitation period and that conduct violated the Separation Agreement.

on the merits of its breach of contract claim (count five) against Tyagi and, therefore, plaintiff has also failed to carry its burden to establish a likelihood of success on the merits of count seven.

### Misappropriation claims (counts one and three)

Separate and apart from its breach of contract claims, plaintiff claims that Carpenter and Boom Trendz misappropriated its trade secrets[10] in violation of the Defense of Trade Secrets Act ("DTSA") (count one) and Ohio Uniform Trade Secrets Act ("UTSA") (count three). The definition of a trade secret and requirements for establishing misappropriation of trade secrets are substantially the same under the DTSA[11] and UTSA.[12] *Aday v. Westfield Ins. Co.*, 486 F. Supp. 3d 1153, 1160, n.6 (S.D. Ohio 2020) (collecting cases and citing among authority H.R. REP. 114-529 ("While other minor differences between the UTSA and Federal definition of a trade secret remain, the Committee does not intend for the definition of a trade secret to be meaningfully different from the scope of that definition as understood by courts in States that have adopted the UTSA.")).

---

[10] At the hearing, plaintiff's counsel indicated that these claims are "primarily" based upon the conduct of Carpenter and Tyagi during the restricted period in their respective contracts with Just Funky. To the extent that is the case, plaintiff fails to establish a likelihood of success on these claims as the Court has concluded that plaintiff has failed to establish a likelihood of success on the merits of plaintiff's breach of contract claims against all defendants.

[11] "The DTSA defines 'trade secret' as follows: '[a]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
(A) the owner thereof has taken reasonable measures to keep such information secret; and
(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]]'" *Noco Co. v. CTEK, Inc.*, No. 1:19-cv-00853, 2020 WL 821485, at *6–7 (N.D. Ohio Feb. 18, 2020) (quoting 18 U.S.C. § 1839(3)).

[12] "[T]he Ohio Supreme Court has articulated six factors to consider in determining whether an item constitutes a trade secret: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information." *Aday*, 486 F. Supp. 3d at 1166–67 (citing *Handel's Enterprises, Inc.*, 765 F. App'x at 122 and Ohio Rev. Code O.R.C. § 1333.61(D)).

Plaintiff's misappropriation claims fall into three categories: (1) product design, (2) product image templates, and (3) customer, supplier, and manufacturer lists.[13] In order to prevail on a misappropriation-of-trade-secret claim plaintiff must, at a minimum, establish the existence of a trade secret and unauthorized use of the trade secret. *See Handel's Enterprises, Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019) (citation omitted).

Plaintiff alleges that Carpenter and Boom Trendz have misappropriated its trade secrets because the design of products on Boom Trendz's website are similar to the designs on plaintiff's website. At the TRO hearing, counsel for Carpenter and Boom Trendz argued that the product designs to which plaintiff points in Exhibit I (Doc. No. 11-2) to the complaint as protected trade secrets do not constitute trade secrets because such products are widely available on the internet. Using Just Funky's bento bowls as an example, counsel argued that the shape and/or depth of a bowl is not a trade secret because it can be created by any manufacturer or designer and the artwork is either stock artwork or licensed images.

At this juncture, the Court finds that plaintiff has not established a likelihood of success on the merits of its misappropriation claims in that it has not established by clear and convincing evidence that its products constitute trade secrets. Just Funky's bento bowls, blankets, cups with chopsticks, and other physical objects are sold in the retail market to the public.[14] (*See* Doc. No. 1 ¶ 16.) Publicly available products and objects are generally not trade secrets. *See State ex rel. Lucas*

---

[13] In support of its misappropriation claims against regarding product design and product image templates, plaintiff points to Exhibit I (Doc. No. 11-2) which it describes as images of its trade secrets, stating that the shape and size and appearance of the product images on Boom Trendz's website (Doc. No. 1-8) are identical to plaintiff's products and images. (*See* Doc. No. 1 ¶¶ 66–69.)

[14] Plaintiff's complaint states that its products are sold to the public. Indeed, it appears from a simple internet search that Just Funky's products are available for purchase on Amazon.com.

*Cnty. Bd. of Comm'rs v. Ohio Env't Prot. Agency*, 724 N.E.2d 411, 418 (Ohio 2000) (information is entitled to trade secret status only if the information is not generally known or readily ascertainable by the public); *see also Johns-Manville Corp. v. Guardian Indus. Corp.*, 586 F. Supp. 1034, 1073 (E.D. Mich. 1983), *amended,* No. 81-cv-70248, 1984 WL 63627 (E.D. Mich. Apr. 3, 1984) (physical objects sold to the public are not trade secrets), *aff'd,* 770 F.2d 178 (Fed. Cir. 1985); *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 986 (N.D. Ohio 2008) (design features of a publicly available product are not trade secrets) (citing *R & R Plastics, Inc. v. F.E. Myers Co.,* 637 N.E.2d 332, 340–41 (1993) ("The United States Supreme Court has held that there is no trade secret interest in a design that can be viewed through casual observation of the finished product.") (citing *Sears, Roebuck & Co. v. Stiffel Co.* 376 U.S. 225, 84 S. Ct. 784, 11 L. Ed. 2d 661 (1964))).

Plaintiff also alleges that it uses templates for the underlying product images upon which it overlays the artwork, and those templates are trade secrets. (Doc. No. 1 ¶¶ 68–70.) Just Funky claims that "[o]n information and belief" Carpenter and Tyagi stole its computer files containing those templates and the product images on Boom Trendz's website were created using plaintiff's stolen templates. (Doc. No. 1 ¶¶ 71–72.) In support of this allegation, plaintiff points to the location of wrinkles in the blanket images, and the orientation of chopsticks as well as the spacing between chopsticks. At the TRO hearing, Carpenter and Tyagi's counsel argued that the location of wrinkles in a blanket product image is not a trade secret as there are many blanket templates publicly available on the internet and the wrinkles to which plaintiff refers in the blanket template could be recreated by a designer without the use of Just Funky's template.[15] And to the extent that blanket wrinkles and chopstick orientation and spacing appear in the product image that Just Funky

---

[15] Counsel for defendant stated at the TRO hearing that a former Just Funky designer now works for Boom Trendz, but plaintiff's counsel was unaware if that was the case or the identify of any such individual.

uses to sell its products to the public in the retail market, the Court's prior analysis regarding product design equally applies.

At this time, the Court finds that plaintiff has not established by clear and convincing evidence that the similarity of product images on Boom Trendz's website to Just Funky's product images is a result of trade secret misappropriation by Carpenter. To the extent that Just Funky's product templates constitute trade secrets, plaintiff's allegation upon information and belief that Carpenter misappropriated the templates is conclusory, vague, and insufficient to establish that Just Funky is substantially likely to succeed on the merits of this claim. *See Total Quality Logistics,* 2021 WL 1964699, at *5. While it is possible that there is merit to Just Funky's claim of template misappropriation, given that a former designer of Just Funky is now employed by Boom Trendz, it is also possible that the design may be attributable to that designer's style or templates widely available. Like other disputed issues in this case, discovery may shed some light on this disputed issue.

Just Funky also alleges that "[o]n information and belief" Carpenter has misappropriated its customer, manufacturer, supplier, and product lists for the purpose of unfairly competing with plaintiff. (Doc. No. 1 ¶¶ 46, 51; *see also id.* ¶ 63 ("Defendants misappropriated Plaintiff's carefully curated customer, manufacturer, and supplier contact lists, in order to unlawfully solicit its customers and vendors."). Customer and other lists and information may constitute trade secrets. *See Thermodyn Corp.*, 593 F. Supp. 2d at 986 (citations omitted). But even assuming for the purpose of this analysis that plaintiff's lists are trade secrets, Just Funky's allegations against Carpenter as to the misappropriation of those lists are once again conclusory, vague and lacking in factual context sufficient to establish by clear and convincing evidence that it is substantially likely to succeed on the merits of this claim.

### b. *Irreparable injury*

Although the Court's conclusion that plaintiff has failed to carry its burden of establishing a substantial likelihood of success on the merits of its breach of contract and misappropriation claims against Carpenter and Boom Trendz is fatal to plaintiff's motion for temporary injunctive relief,[16] the Court will nevertheless briefly consider the element of irreparable injury. Just Funky alleges that if its motion for temporary injunctive relief is not granted, it will suffer irreparable injury in the form of competitive and financial harm. (*See* Doc. No. 1 ¶¶ 115, 120, 125.) As an example, counsel for plaintiff identified one contract for Halloween items that he stated was lost to Boom Trendz.

At the TRO hearing, Carpenter's counsel argued that the twenty-four month limitation period with respect to the restrictive covenants in her Separation Agreement expired in April 2021 and, therefore, there is no continuing threat of breach of the terms of that agreement. Counsel further argued that even if Just Funky were able to ultimately establish that Carpenter breached the Separation Agreement or that Carpenter and Boom Trendz misappropriated plaintiff's trade secrets, plaintiff would not suffer an injury that could not be compensated by money damages because Boom Trendz has only been in business a few months and its sales are minimal, plaintiff has identified only one of plaintiff's customers contacted by Tyagi, and any injury incurred by plaintiff could be calculated.

The Court concludes at this time that, considering plaintiff's evidence of alleged injury and unlawful conduct by defendants and that Boom Trendz is in its infancy, plaintiff will not suffer competitive and financial harm that cannot be calculated by money damages. Injury that can be

---

[16] *See Gonzales*, 225 F.3d at 625.

compensated by money damages is not irreparable. *See Spangler Candy Co. v. Tootsie Roll Indus., LLC*, 372 F. Supp. 3d 588, 607 (N.D. Ohio 2019) (injury is irreparable if it is not fully compensable by monetary damages or the nature of plaintiff's loss makes money damages difficult to calculate) (citations omitted). Because the Court determines at this juncture that any injury sustained by Just Funky (to the extent plaintiff may be able to establish that defendants engaged in unlawful conduct) is compensable by monetary damages, the Court concluded the TRO hearing by ordering Boom Trendz to maintain an accounting of its sales and customer lists from the date it filed for corporate existence with the Ohio Secretary of State until further order of the Court.

### 2. Tyagi

#### a. *Likelihood of success on the merits*

##### *Contract claim (count 5)*

Defendant Tyagi was employed by Just Funky as a Merchandising Manager from January 2013 through October 2015, and then as a Divisional Merchandise Manager from May 2017 through October 2020. In those positions, Tyagi had access to plaintiff's proprietary, confidential information, including trade secrets. (Doc. No. 1 ¶¶ 14, 36, 37.)

Just Funky claims that Tyagi entered into two agreements (collectively, the "Tyagi Agreements") with Just Funky concerning his employment. In count five, plaintiff alleges that Tyagi failed to abide by the restrictive covenants in these agreements, including his obligation to refrain from misappropriating and disclosing plaintiff's confidential information and trade secrets, competing with plaintiff's business, and soliciting plaintiff's manufacturers, customers, and suppliers. (*See* Doc. No. 1 ¶¶ 111–15.)

The first agreement was signed by Tyagi on March 3, 2014 ("2014 Agreement"). (Doc. No. 1-4.) Under the 2014 Agreement, Tyagi agreed, among other things, to maintain the

confidentiality of Plaintiff's confidential, proprietary information and trade secrets and not to compete with plaintiff's business or solicit plaintiff's employees, customers, manufacturers, or suppliers for a period of twenty-four months following the termination of his employment. (Doc. No. 1 ¶ 39; *see also* Doc. No. 1-4 ¶¶ 1–5.) Tyagi left Just Funky's employment in October 2015.

Plaintiff claims that when Tyagi returned to Just Funky's employment in May 2017, he entered a second employment agreement with Just Funky ("2017 Agreement"). (Doc. No. 1 ¶ 40; Doc. No. 1-5.) The 2017 Agreement is similar to the 2014 Agreement with respect to its non-competition and non-solicitation provisions, but the restricted period is reduced from twenty-four months to twelve months. (*See* Doc. No. 1-5 ¶ 2.) Tyagi left Just Funky's employment for a second time on October 30, 2020 and, sometime thereafter, became an employee of Boom Trendz. (Doc. No. 1 ¶¶ 41, 43, 44.)

Plaintiff alleges in count five that Tyagi breached the non-disclosure, non-competition, and non-solicitation provisions of both agreements, claiming that Tyagi contacted Just Funky's manufacturers and suppliers in January 2021 (*Id*. ¶¶ 48, 49), and a Just Funky customer on May 7, 2021 (*id.* ¶¶ 53, 55; Doc. No. 11-1) within the restricted limitation period.[17] Tyagi contends that his alleged conduct does not violate either of the Tyagi Agreements.

### *2014 Agreement*

At the TRO hearing, Tyagi's counsel argued that to the extent the 2014 Agreement is valid, his alleged conduct in January and May 2021 occurred after the twenty-four month restricted

---

[17] For the same reasons discussed above with respect to Carpenter and Boom Trendz, plaintiff's vague and conclusory allegations against Tyagi are insufficient to establish a substantial likelihood on the success of plaintiff's claims against him. (*See e.g.* Doc. No. 1 ¶¶ 47, 51, 52.)

period. Plaintiff claims that Tyagi's first employment period ended in October 2015.[18] (Doc. No. 1 ¶ 14.) There are no allegations in the complaint that any conduct by Tyagi tolled or extended the twenty-four month limitation period as provided under the 2014 Agreement.[19] In that case, the restricted period of the 2014 Agreement ended in October 2017. It appears, therefore, that Tyagi's conduct in January and May 2021 as alleged by plaintiff occurred after the conclusion of the 2014 Agreement's restricted period.

Accordingly, the Court finds that plaintiff has not carried its burden to establish a substantial likelihood of success on the merits that Tyagi's alleged conduct violated the 2014 Agreement.

### 2017 Agreement

Under Ohio law, the first element of a claim for breach of contract is the existence of a contract.[20] *See Issuer Advisory Grp.,* 2015 WL 458113, at *3. With respect to the 2017 Agreement, Tyagi contends that his conduct alleged in January and May 2021 did not violate the 2017 Agreement because the agreement is not valid. Tyagi maintains that he did not enter into the agreement and it is not enforceable in India. Tyagi points to several aspects of the 2017 Agreement in support of his argument that he did not enter into that agreement as claimed by plaintiff. His counsel argued at the hearing that: 1) Tyagi did not sign the agreement and the signature that appears on the agreement is undated; 2) the caption of the agreement is dated November 24, 2015, at which time he was not employed by Just Funky; 3) the agreement states that it was entered into

---

[18] At the TRO hearing, Tyagi's counsel indicated that Tyagi's first period of employment with Just Funky may have ended as early as May 31, 2015.

[19] *See* Doc. No. 1-4 ¶ 7.

[20] The interpretation and enforcement of the 2017 Agreement is governed by Ohio law. (Doc. No. 1-5 ¶ 8.)

with Just Funky, LLC, but in 2017 Tyagi was employed by Just Funky India Trading Private Limited and did not sign any agreement with that entity; 4) the signatures at the bottom of each page appear in both blue and black ink, all of which call into question the validity of the document; and 5) the 2017 Agreement attached to the complaint is not signed by Just Funky. (*See* Doc. No. 1-5 .)

In response, plaintiff's counsel argued at the hearing that the 2015 date on the agreement is an error and the date should be 2017, pointing in support to be an email dated June 14, 2017 purporting to transmit the "NCA/NDA scan copies of new employees."[21] (Doc. No. 1-6.) With respect the Tyagi signatures appearing in both blue and black ink, plaintiff's counsel attributed that anomaly to a scanning issue. Plaintiff further points out that Just Funky India Trading Private Limited is a wholly owned subsidiary of plaintiff and that the language in the 2017 Agreement indicates that its restrictions apply to Just Funky's subsidiaries (*see* Doc. No. 1-5 ¶ 1), and Tyagi was aware from his experience with the 2014 Agreement that non-competition and non-disclosure agreements were a condition of his employment.

In Ohio, an enforceable contract requires "an offer, acceptance, contractual capacity, consideration, . . . a manifestation of mutual assent and legality of object and of consideration. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Nachar v. PNC Bank, Nat. Ass'n,* 901 F. Supp. 2d 1012, 1018 (N.D. Ohio, Eastern Division 2012) (quoting *Artisan Mech., Inc. v. Beiser,* No. CA2020-2-039, 2010 WL 4514275, at *4 (Ohio Ct. App. Nov. 8, 2010)). The fact that one or more party does not sign a contract is not necessarily fatal to the existence of a valid and enforceable agreement if assent to its terms is

---

[21] The email filed with the complaint does not include the attachments referred to therein.

otherwise indicated by the parties. *See Allen v. Ford Motor Co.*, 8 F. Supp. 2d 702, 705 (N.D. Ohio 1998) (citing *Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 375 N.E.2d 410 (1978) and Am Jur. 2d § 185 (1991)). But by asserting that he did not sign the 2017 Agreement and pointing out the aforementioned issues challenging its legitimacy, Tyagi calls into question whether there was a meeting of the minds by both parties to the essential terms of the contract.

Plaintiff may ultimately establish that the 2017 Agreement is a valid and enforceable contract. But in ruling on plaintiff's motion for a temporary restraining order, the Court must consider whether plaintiff has established by clear and convincing evidence now before the Court a substantial likelihood of success on the merits of its claims concerning the 2017 Agreement. Given the issues with that agreement on the face of the document and argued by Tyagi's counsel at the TRO hearing, the Court cannot conclude that plaintiff has carried its burden. *See In re Navy Chaplaincy*, 928 F. Supp. 2d 26, 36 (D.D.C. 2013) (denying motion for preliminary injunction because the court cannot conclude that plaintiff has demonstrated a substantial likelihood of success on the merits where there are disputes regarding the inferences to be drawn from facts in the record), *aff'd*, 738 F.3d 425 (D.C. Cir. 2013).

### *Misappropriation claims (counts 1 and 3)*

To the extent that plaintiff asserts the same misappropriation claims against Tyagi that it asserted against Carpenter and Boom Trendz, those claims fail for the same reason as discussed above. Plaintiff asserts an additional claim against Tyagi, alleging that in the month before his employment with Just Funky ended on October 30, 2020, "a forensic analysis" shows that he accessed plaintiff's computer systems several times from different IP addresses. (*See* Doc. No. 1 ¶¶ 41, 42.) But plaintiff also alleges that in his capacity as Divisional Merchandise Manager, Tyagi had access to these same systems (*id*. ¶ 37), and his counsel argued at the TRO hearing that any

access by Tyagi during the month prior to October 30, 2020 was in connection with his job duties. Just Funky does not claim or offer any evidence that Tyagi accessed the computer systems at issue outside the scope of his employment and, therefore, at this time has not carried its burden to establish that Tyagi's access of its computer systems constitutes a misappropriation of its trade secrets.

### b. *Irreparable injury*

The Court finds that Just Funky has not carried its burden to establish irreparable injury as a result Tyagi's alleged conduct for the same reasons discussed above in connection with plaintiff's claims against Carpenter and Boom Trendz.

### 3. *Plaintiff's motion for a TRO is denied*

Just Funky's failure to establish a substantial likelihood of success on the merits of its contract and misappropriation claims against defendants is, on its own, a sufficient basis upon which to deny plaintiff's motion for a temporary restraining order. *See Barrio Bros., LLC. v. Revolucion, LLC*, No. 1:18-cv-2052, 2018 WL 5960772, at *6 (N.D. Ohio Nov. 14, 2018) ("'The failure to show any likelihood of success on the merits—let alone a strong or substantial likelihood of success—is enough, by itself, to warrant denial of preliminary injunctive relief.'") (quoting *Essroc Cement Corp. v. CPRIN, Inc.,* 593 F. Supp. 2d 962, 969 (W.D. Mich. 2008) (citing *Abney v. Amgen, Inc.,* 443 F.3d 540, 547 (6th Cir. 2006) ("a finding of no likelihood of success 'is usually fatal'"))). The same is true as to Just Funky's failure to establish irreparable harm. *Residential Fin. Corp. v. Jacobs*, No. 2:13-cv-1167, 2014 WL 682486, at *4 (S.D. Ohio Feb. 21, 2014) ("[T]he failure to show irreparable harm is an independently sufficient ground upon which to deny a temporary restraining order and/or preliminary injunction.") (citing *In re De Lorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985)). Given that plaintiff has not carried its burden to establish a

substantial likelihood of success on the merits of its claims or to establish irreparable injury, the Court need not analyze the remaining two factors to be considered when deciding a motion for temporary injunctive relief, that is, whether the imposition of a temporary restraining order would cause harm to others or be in the public interest. *See Shoemaker v. Biden*, No. 1:21-cv-00230, 2021 WL 2292287, at *4 (N.D. Ohio June 4, 2021).

Accordingly, Just Funky's motion for a temporary restraining order against defendants is denied.

## III. CONCLUSION

At the TRO hearing, counsel for Just Funky stated that plaintiff was gathering additional information in support of its claims. The Court's obligation in determining whether Just Funky is entitled to a temporary restraining order, however, is to determine whether plaintiff has met its burden of establishing a substantial likelihood of success on the merits of its contract and misappropriation claims based upon the evidence now before the Court. *See Marshall*, 2015 WL 1179955, at *8 ("Plaintiff has the burden of proving that a TRO is warranted, and that he is substantially likely to succeed on the merits of his claim, *now*. Plaintiff may use evidence obtained in discovery to support his request for a preliminary injunction down the road, but at this juncture the Court cannot find that his unsupported speculations and inferences rise to the level of 'a substantial likelihood of success.'") (emphasis in the original). For the reasons discussed above, plaintiff has failed to do so and its motion for a temporary restraining order is denied.

The Court will next conduct a preliminary injunction hearing. Counsel are to confer and within seven days jointly advise the Court in writing how much time is needed to conduct discovery and file briefs in advance of the hearing. Additionally, the Court will set this matter for a case management conference to select the dates that will otherwise govern this case. Boom

Trendz is reminded that it is required to keep an accurate accounting of its sales and customer lists and contacts from the date the business was formed.

**IT IS SO ORDERED**.


Dated: June 25, 2021

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**